UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:20-CV-00118-BJB-CHL

STEVEN J. DORN,                                                                    Plaintiff,

v.

NEIL S. DOMINIQUE,                                                            Defendant.

## ORDER

Before the Court is the Motion for Leave to File Memorandum in Support of Motion for Sanctions in Excess of Page Limitations filed by Plaintiff Steven J. Dorn ("Plaintiff") (DN 46); Motion for Sanctions, Motion to Compel, and Motion for Extension of Remaining Case Deadlines filed by Plaintiff (DN 47); Motions for Leave to Seal filed by Plaintiff (DNs 48, 63, 67); Motion for Leave to Seal filed by Defendant Neil S. Dominique ("Defendant") (DN 51); Motion for Leave to File Excess Pages With Response to Motion for Sanctions, Motion to Compel, and Motion to Extend Existing Case Deadlines filed by Defendant (DN 59); Cross Motion to Strike Sealed Document, or in the Alternative Permanently Seal Deposition Transcript Pages 442 through 445 of Exhibit 15 filed by Defendant (DN 61); and the Cross Motion for Leave to Seal Document filed by Defendant.  (DN 72.)  For the following reasons, Plaintiff's Motions for Leave to File Pages in Excess (DNs 46, 59) is **GRANTED**; Plaintiff's Motion for Sanctions (DN 47) is **DENIED**; Plaintiff's Motion to Compel (DN 47) is **GRANTED IN PART**; Plaintiff's Motion to Extend Case Deadlines (DN 47) is **GRANTED**; Plaintiff's Motions for Leave to Seal (DNs 48, 63, 67) is **GRANTED**; Defendant's Cross Motion to Strike (DN 61) is **GRANTED IN PART**; Defendant's Motion for Leave to Seal (DN 51) is **DENIED**; Defendant's Cross Motion for Leave to Seal (DN 72) is **DENIED WITHOUT PREJUDICE**.

## I.    Background

### A.    Factual Background

This litigation has a long and complex history.  This matter began with a contract (the "Agreement") between Plaintiff and rhythm & blues singer Bryson Tiller ("Tiller").  (DN 1 at ¶ 17.)  Under the Agreement, Plaintiff would serve as the sole and exclusive personal manager for Tiller in exchange for 20% of the net compensation Tiller received.  (*Id.* at ¶¶ 17, 18.)  However, the relationship between Tiller and Plaintiff soured soon after Defendant joined Tiller's team.  By the end of March of 2015, Tiller told Plaintiff that he and Defendant would be co-managers, and that he would be changing his compensation arrangement.  (DN 1 at ¶ 27.)  Plaintiff grew suspicious of Defendant, believing that Defendant was plotting to usurp him as the sole manager for Tiller.  (*Id.* at ¶ 37.)  On June 15, John Ingram, Tiller's attorney, texted Plaintiff, stating that Tiller wanted Plaintiff and Defendant to meet with Ingram.  (*Id.* at ¶ 39.)  However, at the meeting, Ingram told Plaintiff that Tiller had fired him.  (*Id.* at ¶ 40.)

### B.    Procedural History

#### 1.    Motion for Sanctions

Shortly after Plaintiff was fired, he and Tiller litigated in Kentucky over several issues (the "Former Litigation").  (DN 47-1, at PageID # 517.)  During the Former Litigation, Plaintiff filed a counterclaim against Tiller, alleging that Defendant usurped Plaintiff's role as manager and that Tiller retained Defendant's services under suspicious circumstances.  (*Id.* at PageID # 522.)  In September of 2016, Plaintiff sought leave to file a third-party complaint against Defendant, asserting a claim of tortious interference.  (*Id.*)  That third-party complaint was ultimately not served on Defendant.  (*Id.*)  The Former Litigation settled in August of 2020.  (*Id.* at PageID # 517.)

In June of 2017, Plaintiff sued Ingram in California. (DN 47-1, at PageID # 523.) Plaintiff alleged, among other things, that the circumstances of Defendant becoming Tiller's manager were suspicious. (*Id.*) Plaintiff then issued a subpoena on Defendant in December of 2017 (the "Ingram Action Subpoena"). (*Id.*) The subpoena requested all text messages and e-mails between Defendant and Tiller; all text messages and e-mails with other members of Tiller's team; and records related to his compensation earned from Tiller. (*Id.*) Defendant hired Grahmn Morgan, Tiller's lead counsel in the Former Litigation, to respond on his behalf. (*Id.*)

Defendant searched for and preserved documents in response to the Ingram Action Subpoena.[1] (DN 57, at PageID # 1165.) But Defendant did not produce these documents because they were the subject of a pending Motion for Protective Order related to certain information sought through the Ingram Action Subpoena. (*Id.*) Before that motion was ruled on, the litigation was dismissed. (*Id.*)

In January of 2020, Plaintiff served Defendant with a subpoena in relation to the Former Litigation. (DN 57, at PageID # 1165.) Counsel for Defendant then helped him search his e-mail accounts and his text messages. (DN 57-15 at ¶ 6.) Defendant produced responsive documents to Plaintiff on February 12, 2020. (DN 57, at PageID # 1166.) Plaintiff then filed this present lawsuit in February of 2020, the same year the Former Litigation settled. (DN 1.)

However, the documents Defendant produced were not enough for Plaintiff. Plaintiff issued additional discovery requests to Defendant on June 4, 2024, seeking many of the same documents as before. (DN 47-1, at PageID # 517.) These were:

---

[1] These were:
- Communications to/from Plaintiff or about Plaintiff through June 2015.
- Communications related to the Management Agreement entered into between Plaintiff and Tiller
- Documents related to True, LLC
- The management contract entered into between Defendant and Tiller; and
- Communications about how bad/good Dorn was as a manager.

RFP No. 5: Produce all communications between you and Tiller regarding, referring to, relating to, or otherwise concerning Plaintiff.

RFP No. 6: Produce all documents regarding, referring to, relating to, or otherwise concerning Plaintiff.

RFP No. 7: Produce any and all communications between you and any third party regarding, referring to, relating to, or otherwise concerning Plaintiff.

(DN 47-1, at PageID # 518.)  Defendant searched a third time for responsive documents and communications but found no additional responsive items.  (DN 57, at PageID # 1170.) Instead, Defendant reproduced the documents he provided to Plaintiff in response to the 2020 Subpoena.  Plaintiff is now asserting there were additional documents Defendant failed to preserve. (DN 47-1, at PageID # 524.)  Plaintiff is now seeking a sanction in the form of an adverse inference instruction against Defendant.

## 2.    Motion to Compel

Plaintiff also sought discovery related to Tiller's and Defendant's financial information. (DN 47-1, at PageID # 518.)  In particular, Plaintiff requested:

Interrogatory 9: Identify the total amount of compensation you received from Tiller on and before June 15, 2016.

Interrogatory 10: Identify the total amount of compensation you received from Tiller after June 15, 2016.

RFP No. 11: Produce documents sufficient to identify the Net Compensation earned by Tiller from January 1, 2015, to the present.

RFP No. 12: Produce documents sufficient to identify all compensation you have received from your job as co-manager and manager of Tiller.

RFP No. 13: Produce your tax returns from or covering the periods January 1, 2015, to December 31, 2018, including all supporting schedules.

RFP No. 14: Produce your bank statements from January 1, 2015, to December 31, 2018.

(DN 47-1, at PageID # 519.)  Defendant declined to produce responsive documents or answer the interrogatories.  (DN 47-4.)  The Parties attempted to resolve this dispute without judicial involvement but ultimately decided to request a status conference with the undersigned.

(DN 44.)  After the status conference, the Court permitted Plaintiff to file his motion to address the issues in discovery.  (DN 45.)

### 3.    Motions to Seal

The Parties have also filed various motions to file certain documents under seal.  Plaintiff has filed a Motion to Seal (DN 48) Exhibits 10, 14, 15, 26, 27, and 28 (DN 49) to his Motion for Sanctions (DN 47) under seal.  Defendant filed a Cross Motion to Strike, or in the Alternative Permanently Seal (DN 61), portions of Exhibit 15.  (DN 49-2.)

Plaintiff filed two additional Motions to Seal (DNs 63, and 67.)  In his first Motion (DN 63), Plaintiff seeks to file Exhibits 1, 6, 8, 9, 15, 25, 26, and 27 (DN 64) to his Response in Opposition to Defendant's Motion for Summary Judgment on Causation (DN 62) provisionally under seal.  In his second Motion (DN 67), Plaintiff seeks to file Exhibit 3 (DN 68) to his Reply in Support of his Motion for Sanctions (DN 66) provisionally under seal.  Defendant has filed a Cross Motion to Seal these exhibits permanently.  (DN 72.)

## II.    Discussion

### A.    Motion for Sanctions (DN 47)

If a party fails to take reasonable steps to preserve electronically stored information ("ESI") that should have been preserved in the anticipation or conduct of litigation, and it cannot be restored or replaced through additional discovery, a court, upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1).  Additionally, a court may presume that the lost information was unfavorable to the party or instruct the jury that it may or must presume the information was unfavorable to the party only if the court finds that the party intended to deprive another party of the information's use in the litigation. Fed. R. Civ. P. 37(e)(2).

### 1.    Defendant lost ESI in the form of text messages and e-mails.

Rule 37(e) only applies if the ESI is actually lost.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  ESI is often stored in multiple locations, so "loss" from one source may be harmless when substitute information can be found elsewhere.  *Id.*  This is especially true for text messages and e-mails, where the sender and recipient of text messages and e-mails are both custodians of the ESI in question.  *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) (e-mails); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 235 (D. Minn. 2019) (text messages).

Here, Defendant lost ESI by replacing his cell phone, in 2019, without backing up certain text messages.  Thus, when Defendant searched for and produced communications to respond to the 2020 Subpoena, he could not have possibly produced text messages he did not search for and preserve in 2018.  (DN 57-15 at ¶¶ 4-5.)  Since Defendant only searched for communications concerning Plaintiff through June 2015, any communication after June 2015 but before 2019 would have been lost.  Accordingly, the undersigned finds that ESI in the form of text messages has been lost.  *See Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, 2016 No. 14-CV-62216, 2016 WL 1105297, at *5 (S.D. Fl. Mar. 22, 2016) ("However, since it appears that at least some of the text messages at issue were not replaced and were therefore lost, the Court will continue the analysis under Rule 37(e) and proceed to the third preliminary question.").

Defendant also lost ESI by deleting his e-mails.  As a preliminary matter, Defendant only has access to two out of the six e-mail addresses discussed in Plaintiff's Motion, and Defendant only deleted e-mails from one of those inboxes: neildominique@me.com.  (DN 47-1, at PageID # 526.)  As for the other four e-mail addresses, three are addresses Defendant lost access to before his duty to preserve evidence arose, as discussed below, and one is an address Defendant *never*

had access to.  (*Id.*)  As for the address Defendant does have access to, Defendant testified that he personally deletes emails from the neildominique@me.com account whenever his mailbox is full or whenever his computer needs space.  (DN 49, at PageID # 791.)  As with his text messages, any e-mail that Defendant did not search for and preserve in response to the Ingram Action Subpoena would have been deleted.  *See Schnatter v. 247 Grp., LLC*, No. 320CV00003BJBCHL, 2022 WL 2402658, at *10 (W.D. Ky. Mar. 14, 2022) (holding that ESI was lost due to the plaintiff's routine practice of immediately deleting text messages that he sends or receives).

Moreover, the lost text messages and e-mails cannot be replaced.  Here, Plaintiff sought *all* communications between Defendant and Tiller as well as *any and all* communications between Defendant and any third party "regarding, referring to, relating to, or otherwise concerning Plaintiff."  (DN 47-1, at PageID # 518.)  This means that *even if* Plaintiff could recover e-mails or text messages from Tiller, that would not be enough, because this would not include every e-mail or text message between Defendant and third parties.  *See Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019) (stating that no amount of discovery of other people's e-mails will confirm the extent to which information was lost when one person deleted her e-mail files).  Nor could Plaintiff recover e-mails or text messages from Tiller to begin with, because Tiller did not save text messages relating to Plaintiff.  (DN 49-2, at PageID # 807-11.)  Accordingly, the undersigned finds that the ESI in question has been lost and cannot be replaced.

### 2. Defendant had a duty to preserve potentially relevant ESI as early as December of 2017.

Under Rule 37(e), a court may only award sanctions if lost ESI should have been preserved in anticipation or conduct of litigation.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Rule 37(e) is based on the common-law duty to preserve information when litigation is reasonably foreseeable, and thus does not apply when information is lost before the duty to

preserve arises. *Id.* The duty to preserve arises when a party has notice that evidence in his or her possession is relevant to litigation or should have known that such evidence may be relevant to future litigation. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Accordingly, the Court must determine when Defendant should have known that text messages or e-mails in his possession may have been relevant to this matter.

In *Phoenix Process Equipment Co. v. Capital Equipment & Trading Corp.*, No. 3:16-CV-00024-CHB, 2022 WL 3094320 (W.D. Ky. July 18, 2022), report and recommendation adopted, No. 3:16-CV-024, 2022 WL 3088102 (W.D. Ky. Aug. 3, 2022), the magistrate judge found that the duty to preserve ESI may arise when a party informs another party of its belief in an actionable claim and its intent to pursue such a claim. *Id.* at *6. In *Phoenix*, Phoenix's CEO sent an e-mail to an executive at Coralina concerning his beliefs that Elemet was affiliated with Cetco/Coralina; that Element was manufacturing belt filter presses in Phoenix's market area; and that Element appeared to be advertising Phoenix belt filter presses on its website as its own product. *Id.* at *6. Pheonix's CEO sent other e-mails discussing evidence of violations of the distributor agreement between Phoenix and Cetco; how Phoenix learned of Coralina's ownership of the Element manufacturing plant; and how Elemet had a direct copy of a Phoenix Belt Filter Press on their website. *Id.* Finally, Phoenix's CEO sent an e-mail to another defendant notifying him of his intent to immediately pursue legal options. *Id.* The magistrate judge thus found the defendants should have known evidence relating to their transactions and dealings would likely be relevant, and the duty to preserve ESI thus arose from those e-mails. *Id.*

In *KCH Services, Inc. v. Vanaire, Inc.*, No. CIV.A. 05-777-C, 2009 WL 2216601 (W.D. Ky. July 22, 2009), the Court held that a duty to preserve may arise even when the defendant did not know litigation was "on the horizon," or that ESI in its possession was actually relevant. *Id.*

at *1.  Instead, the Court held the duty to preserve arises when a party "should have known" that evidence in its possession "may be relevant" to future litigation.  *Id.*  The Court held the duty to preserve attached in October of 2005, two months before the plaintiff sent an evidence-preservation letter to the defendant, for three reasons: (1) the plaintiff's president, Kenneth Hankinson, notified the defendant that he believed the defendant was using the plaintiff's software; (2) the defendants were familiar with the plaintiff's willingness and ability to file suit; and (3) Vanegas, Sr. ordered the software deleted immediately after the telephone call.  *Id.*  The Court considered these factors as evidence that the defendants did, in fact, have notice that such evidence was potentially relevant to possible future litigation, even though litigation was not "on the horizon," and even though the plaintiffs did not yet send a preservation letter.  *Id.*

Here, Plaintiff claims that Defendant's duty to preserve relevant evidence arose as far back as March of 2016, when Tiller filed suit against Plaintiff.  (DN 47-1, at PageID # 522.)  Plaintiff argues that because Tiller "discussed certain aspects of the Former Litigation with Defendant," Defendant should have known of the subject matter of the litigation, and by extension, Plaintiff's grievances with Defendant.[2]  (*Id.*)  Alternatively, Plaintiff argues that because he filed a counterclaim against Tiller in the Former Litigation that referenced Plaintiff's beliefs that Defendant usurped Plaintiff's role as manager of Tiller in August of 2016, the duty to preserve arose then.  (*Id.*)  Even then, Plaintiff asserts that the duty to arose could have also attached in September of 2016, when he filed a motion for leave to file a third-party complaint against Defendant during the Former Litigation.  (*Id.*)  This third-party complaint asserted claims against Defendant for tortious interference based, in part, on certain communications between Tiller and

---

[2] The "certain aspects" of the litigation Plaintiff refers to is a highly sensitive allegation against Tiller.  (DN 70, at PageID # 2424.)  The sensitive allegation was made in 2019.  (DN 75, at PageID # 2498.)  Thus, even if this conversation were enough to trigger the duty to preserve evidence, it would have done so in 2019, not 2016.

Defendant.  (*Id.*)  However, Plaintiff admits there is "no evidence that the third-party complaint was ever deemed filed or served on Defendant and Defendant testified that he seen [sic] it before." (*Id.*)  Plaintiff's only response to Defendant's testimony is that he finds it "difficult to believe such testimony considering how much Tiller and Defendant communicated and the seriousness of the allegations against Defendant contained in those documents."  (*Id.*)  Plaintiff then states that Defendant at least should have known about the claims and should have known that he possessed relevant information.  (*Id.* at PageID # 523.)  Lastly, Plaintiff argues that Defendant's duty to preserve could have attached no later than December 11, 2017, when Defendant was served with a subpoena to produce "all texts and emails between Defendant and Tiller; all texts and emails with other members of Tiller's inner circle; and records related to his compensation earned from Tiller."  (DN 47-1, at PageID # 523.)

Defendant responds by arguing he had no duty to preserve evidence until at least February 12, 2020, when Plaintiff initiated this matter, because those claims were not reasonably foreseeable until then.  (DN 57, at PageID # 1178).  Accordingly, there are five potential dates that could serve as the date Defendant's obligation to preserve relevant evidence arose: March of 2016, the date the Former Litigation began; August of 2016, the date Plaintiff filed his counterclaim in the Former Litigation; September of 2016, the date Plaintiff sought leave to file a third-party complaint; December 11, 2017, the date Defendant was served with the Ingram Action Subpoena; and February 12, 2020, the date Plaintiff filed his claims in this matter.

Plaintiff argues that because Tiller spoke with Defendant on a regular basis during his lawsuit with Plaintiff in 2016, it is thus "difficult to believe" Defendant's testimony that he was never aware of Plaintiff's counterclaims or third-party complaint against Defendant.  (DN 47-1, at PageID # 522.)  But this argument relies on ifs and maybes.  *If* Tiller regularly communicated with

Defendant during the Former Litigation, then *maybe* they spoke about Plaintiff's belief that Defendant usurped Plaintiff's role as manager of Tiller.  *Cf. Phoenix*, 2022 WL 3094320, at *6 (holding that the email exchange between the parties explicitly referenced the plaintiff's belief that the defendants were infringing on plaintiff's intellectual property).  Defendant, on the other hand, testified that he was not aware of Plaintiff's allegations against him back in 2016.  (DN 49, at PageID # 798-99.)  Plaintiff's response to this testimony is merely to say, "it is difficult to believe such testimony."  If Plaintiff intends to accuse Defendant of perjury, the Court expects more than ifs and maybes to support that accusation.  Accordingly, the Court does not find that Defendant's obligation to preserve relevant evidence arose at any point in 2016.

However, it is important to remember that Rule 37 does not place an obligation to preserve relevant evidence solely on the Parties, but on counsel for the Parties as well.  *John B. v. Goetz*, 879 F. Supp. 2d 787, 868 (M.D. Tenn. 2010) ("Once on notice [that evidence is relevant], the obligation to preserve evidence runs first to counsel, who then has a duty to advise and explain to the client its obligations to retain pertinent documents that may be relevant to the litigation.") (quoting *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 189 F.R.D. 76, 81 (S.D.N.Y.1999)).  Thus, the issue is not solely whether Defendant had a responsibility to preserve relevant evidence, but whether Defendant's counsel had a responsibility to advise and explain to Defendant his obligations to retain pertinent documents.  Grahmn N. Morgan, counsel for Defendant, was Tiller's counsel in the Former Litigation.  (DN 47-3, at PageID # 562.)  Accordingly, Morgan should have known that Plaintiff sought leave to file a third-party complaint against Defendant in the Former Litigation.  In response to the Ingram Action Subpoena, Defendant hired Morgan to respond to the subpoena on his behalf.  (DN 47-1, at PageID # 523.)  Like the defendants in *Phoenix*, Morgan knew Plaintiff believed he had an actionable claim against Defendant and intended to pursue that

11

claim.  Thus, when Defendant retained Morgan as his attorney, Morgan had an obligation to inform Defendant that he possessed information that may be relevant to potential litigation.  Accordingly, the undersigned finds that Plaintiff's duty to preserve potentially relevant evidence arose in December of 2017, the date he received the Ingram Action Subpoena.

### 3.    Defendant did not take reasonable steps to preserve ESI.

Under Rule 37(e), parties do not have to preserve all relevant ESI perfectly.  Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment.  If a party takes reasonable steps to preserve relevant ESI, and it is lost anyway, Rule 37(e) does not apply.  *Id.*  In determining whether a party took reasonable steps to preserve relevant ESI, courts should consider, among other factors, the party's sophistication, and the proportionality of preservation efforts.  *Id.*  Moreover, once the duty to preserve attaches, a party must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure relevant documents are not deleted.  *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 999 (N.D. Ohio 2016).

Here, the Court finds Defendant did not take reasonable steps to preserve potentially relevant information by collecting and preserving communications only through June 2015.  It is not appropriate for a litigant to unilaterally decide what information is relevant, preserve *that* information only, and then fail to preserve the rest.  To be certain, Plaintiff logically could not uncover direct evidence of Defendant inducing Tiller into breaching his contract with Plaintiff by searching for communications made *after* the contract was breached, but that is not the only way written communications could be relevant.  Any communication made after June of 2015 could have been relevant for many reasons.  Defendant may have discussed relevant events that took place during the period.  Defendant could have discussed Tiller's reasons for firing Plaintiff.  Defendant could have even discussed these matters with individuals other than Tiller.  The fact

that Defendant failed to preserve those communications means that Plaintiff and the Court can no longer determine what they reveal because they no longer exist. Thus, the Court finds that Defendant failed to take reasonable steps to preserve potentially relevant information by failing to preserve communications outside of his self-imposed period.

### 4. The deleted text messages and e-mails cannot be restored or replaced through additional discovery.

Before a court may employ any of the measures authorized by Rule 37(e), it must first consider whether it can address the loss by ordering additional discovery. Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment. If the information is restored or replaced, no further measures should be taken. *Id.* However, any attempt to restore lost information should be proportional to the apparent importance of the lost information to claims or defenses in the litigation. *Id.* A court should not order substantial measures to restore or replace information that is marginally relevant or duplicative. *Id.*

Here, Defendant asserts that his counsel was able to "obtain and produce the complete contents of the email account that Tiller used to communicate during the relevant time period in 2015, which should contain any email correspondence Dorn contends might be missing between Dominique and Tiller." (DN 57, at PageID # 1185.) But as discussed above, communications made in 2015 are not the only communications that could be relevant in this matter. The e-mail account Defendant refers to is brysontillerbusiness@gmail.com. (*Id.*) Defendant asserts that when Tiller terminated Plaintiff as his manager, Plaintiff locked Tiller out of the account and refused him access. *Id.* Since Plaintiff is seeking communications between Tiller and Defendant from 2015 to the present, the brysontillerbusiness@gmail.com account would not be an adequate replacement for lost ESI if Tiller could not have used it to communicate with Defendant after 2015.

13

As for text messages, Defendant argues that Tiller's cell phone was covered under the Verizon account held by Plaintiff and his father.  (DN 57, at PageID # 1185.)  Defendant then states that this means Plaintiff could access activity details and spreadsheets for the last 90 days for Tiller's phone at any point during the time that Tiller's account was linked to Plaintiff's account.  (*Id.*)  But this is only for the period between January of 2015 and June of 2015; it does not account for any communications after that period.

Defendant also argues that Plaintiff had, in his possession, the actual cell phone Tiller used during the period Plaintiff was his manager.  (DN 57, at PageID # 1186.)  There appears to be a disagreement between the Parties as to whether Plaintiff actually does possess Tiller's old cell phone.  Defendant asserts Tiller mailed his cell phone to Plaintiff after Tiller fired him.  (DN 57, at PageID # 1186.)  But Plaintiff implies that he never received Tiller's cell phone.  (DN 66, at PageID # 2309.)  ("[E]ven if it was true that Tiller mailed his cell phone back to Dorn in July of 2015…")  Regardless as to whether Plaintiff received Tiller's cell phone in 2015, it would not be an adequate replacement for the lost ESI.  Like with the brysontillerbusiness@gmail.com account, Tiller's cell phone would not contain any communications between Tiller and Defendant after Plaintiff's termination if Tiller no longer had access to it and thus could not use it to communicate with Defendant.

Accordingly, the undersigned finds that the Court cannot replace the lost ESI with additional discovery.  The brysontillerbusiness@gmail.com account would not have contained any communications between Tiller and Defendant after the date of Plaintiff's termination and before 2018.  Moreover, Tiller's cell phone and cell phone records would not contain any communications between Defendant and Tiller after Tiller returned his cell phone to Plaintiff.

**5.    Although Defendant failed to take reasonable steps to preserve potentially relevant text messages and e-mails, Plaintiff was not prejudiced.**

Under Rule 37(e)(1), the Court may order measures no greater than necessary to cure the prejudice suffered by the party claiming spoliation, but this requires a threshold showing of prejudice. Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. To determine prejudice, the Court must determine the importance of the lost ESI to the litigation. *Id.* The rule does not place a burden of proving or disproving prejudice on one party or the other because determining the content of lost information may be a difficult task in some cases and placing the burden of proving prejudice on the party that did not lose the information may be unfair. *Id.* But in some cases, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may seem sufficient to meet the needs of all parties. *Id.* Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. *Id.* Accordingly, judges have the discretion to determine how best to assess prejudice in particular cases.

**a)    The Court cannot adduce, from the available evidence, that the deleted text messages and e-mails would have been relevant.**

Under Rule 37(e)(1), the party seeking an adverse inference instruction must make some showing that the lost evidence would have been relevant to a contested issue. *McCarty v. Covol Fuels No. 2, LLC*, 644 F. App'x 372, 379 (6th Cir. 2016). Courts may rely on circumstantial evidence to suggest the contents of lost ESI. *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 514 (6th Cir. 2014) (quoting *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 555 (6th Cir. 2010)). That is because courts can often only guess what the missing evidence may have been. *Schnatter*, 2022 WL 2402658, at *14 (quoting *Benefield v. Mstreet Ent., LLC*, 197 F. Supp. 3d 990, 1006 (M.D. Tenn. 2016)).

In *Schnatter*, the undersigned found that the lost ESI would have been relevant to the plaintiff's tortious interference claim.  2022 WL 2402658, at *14.  The undersigned noted that the plaintiff's lost communications would have been helpful to the defense because they were probative of intervening conduct by the plaintiff that may have caused his contracts to be terminated, as opposed to any action attributable to the defendants.  *Id.*  The undersigned further found that the plaintiff's lost communications were probative of the economic opportunities he lost because of the alleged interference.  *Id.*  The undersigned thus determined that the lost ESI likely would have been relevant to the matter.  *Id.*

In *Buren v. Crawford County.*, No. 13-CV-14565, 2017 WL 168156 (E.D. Mich. Jan. 17, 2017), the court determined, based on the evidence available to it, that the missing audio recordings of the alleged shooting would have been relevant.  *Id.* at * 13.  One of the defendants testified that the audio recording device "worked sometimes," and thus could have been functioning during the shooting.  *Id.*  Moreover, the defendant testified that he switched on the microphone before the shooting.  *Id.*  The device also would have been within the proper range to record the incident.  *Id.*  Finally, the court indicated that the recording from the defendant's car "would have potentially provided unbiased and incisive evidence regarding the most relevant and contested facts in this case."  *Id*.  Taking these factors together, the court determined there was enough evidence to conclude that relevant evidence of the incident would have been destroyed, and plaintiff was thus prejudiced by the loss of the recording.  *Id.*

However, in *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Management, LLC.*, No. CIV.A. 5:11-374-DCR, 2014 WL 2203893 (E.D. Ky. May 27, 2014), the court held that the plaintiffs could not demonstrate that lost evidence would have been relevant to the matter.  *Id.* at * 3.  The defendants asserted that the evidence plaintiffs claimed was "lost" did not actually exist

16

and any requested information was already produced in discovery.  *Id.*  Thus, any attempt to reproduce allegedly lost ESI would have been unnecessary, impractical, and duplicative.  *Id.*  The court therefore held that an adverse inference instruction was not warranted.  *Id.*

Here, to show relevance, Plaintiff must show that Defendant lost ESI relevant to Plaintiff's claim for tortious interference.  To succeed on a claim for tortious interference, Plaintiff must show: (1) a contract existed; (2) Defendant knew of the contract; (3) Defendant intended to cause a breach of that contract; (4) Defendant's actions caused a breach of that contract; (5) Plaintiff incurred damages and (6) Defendant had no privilege or justification to excuse its conduct.  *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. Ct. App. 2012).  Thus, any communication that either demonstrates that Defendant interfered with Plaintiff's contract or reveals Tiller's reasons for terminating Plaintiff would have been relevant.  *See House v. Players' Dugout, Inc.*, 440 F. Supp. 3d 673, 692 (W.D. Ky. 2020) (holding that communications between claimant and third party were relevant to show an intervening cause for the alleged breach).

Here, Plaintiff repeatedly says that because Defendant deleted communications "it is virtually impossible to determine" what might have been in those communications.  (DN 66, at PageID # 2306.)  Plaintiff is correct that courts cannot perfectly predict the content of lost evidence, and thus must often rely on circumstantial evidence to adduce the content of such evidence.  *Schnatter*, 2022 WL 2402658, at *14.  But this is not enough.  The Court would still need some evidence to adduce that the deleted ESI likely would have been in fact what Plaintiff says it is.  *Automated Solutions*, 756 F.3d at 514.  The Court has not seen enough evidence to conclude that relevant text messages or e-mails were lost.  Certainly, Tiller and Defendant did discuss Tiller's reasons for terminating Plaintiff "months after or during" the time of Plaintiff's termination, meaning that such discussions would be relevant to show an intervening cause.  (DN 57-2, at

PageID # 1216.)  But Tiller never specified that these discussions were through text messages or e-mails.  (*Id.*)  From the testimony alone, the Court could just as easily conclude that these conversations were verbal.  In fact, Defendant's primary form of communication with Tiller was verbal.  (DN 57, at PageID # 1183.)  Defendant preferred to text or e-mail his clients to share logistics rather than to discuss substantive business decisions.  *Id.*  Defendant's testimony thus casts doubt on Plaintiff's assertion that he would have texted Tiller about Plaintiff's termination.  *See Scatuorchio*, 2014 WL 2203893, at *4.

Moreover, the evidence Plaintiff does provide is thin.  First, Plaintiff asserts that "Tiller generally recalls texting about Dorn's termination."  (DN 66, at PageID # 2306.)  While that may justify subpoenaing Tiller for his text messages, that would not justify sanctioning Defendant for deleting his own, because Tiller did not testify that he texted *Defendant* his reasons for terminating Plaintiff.  Second, Plaintiff argues that because Tiller and Defendant "regularly communicated with each other through text message, through email, and through an Instagram groupchat" that the Court should conclude that the two discussed Plaintiff's termination through text messages, e-mails, or Instagram messages.  (DN 47-1, at PageID # 526.)  But the mere fact that Defendant and Tiller communicated through text messages and e-mails is not enough to conclude that they spoke about Plaintiff's termination through those mediums.  Taking these factors together, the Court does not find enough evidence to conclude Defendant spoliated relevant evidence.  *Cf. Buren*, 2017 WL 168156, at *13 (holding that, because the recording device was switched on and within range of the shooting, the deleted audio files from the device likely would have been relevant).

Moreover, the e-mails Defendant did produce further support his testimony that his written communications with Tiller were mostly about logistics.  (DN 47-18) (discussing where to send checks for payment under the RCA contract); (DN 47-19) (scheduling a call to discuss offers);

(DN 47-20) (setting up a meeting between Mathew Vlasic, Plaintiff, and Defendant); (DN 47-21) (discussing availability for after parties for a tour run); (DN 47-25) (scheduling a call with Noah Shebib); (DN 47-26) (clarifying e-mail address for discussing anything related to Tiller); (DN 47-27) (clarifying the point of contact for Tiller to others); (DN 47-28) (an e-mail from Sony to Defendant discussing direct payments); (DN 57-26) (scheduling a meeting and discussing payment).  None of these written communications are enough for the Court to conclude that Defendant ever had text messages or e-mails bearing on Tiller's reasons for firing Plaintiff.

The best evidence the Court can find of any written communications documenting Tiller's reasons for firing Plaintiff is in Plaintiff's deposition testimony, the portion of which was submitted to the Court shows Plaintiff repeatedly being evasive and vague.  (DN 57-24.)  Early on in Plaintiff's deposition, he was asked if he recalled whether he spoke with Ryan Cox about his belief that Defendant was attempting to interfere with his relationship with Tiller, to which Plaintiff answered, "I don't recall specifically.  It was 2015.  I don't recall off the top of my head."  (*Id.* at PageID # 1533.)  When Plaintiff was asked if he believed Cox would have overheard conversations between Defendant and Tiller concerning Plaintiff's competence as Tiller's manager and then relayed those conversations to Plaintiff in 2015, Plaintiff only said "[h]e may have."  (*Id.* at PageID # 1535.)  When Plaintiff was then asked if he had any specific memory of Cox saying that Defendant was leveraging his relationship with Sean Combs, to which Plaintiff answered, "Well, you are asking me to try to remember exact conversations from ten years ago."  (*Id.* at PageID # 1537.)  When pressed further, Plaintiff admitted he had no specific memory of Cox saying such a thing off the top of his head.  (*Id.*)  At another point in Plaintiff's deposition, when he was asked what day he was terminated by Mr. Tiller, he said he did not recall.  (*Id.* at PageID # 1543.)  When he was asked if it was on June 15th, 2015, he only said "[i]t is possible."  (*Id.*)  Later, Plaintiff was

asked to confirm if the First Amended Counterclaims in the Former Litigation (DN 57-9) stated that "the bad things that Mr. Tiller had to say about [him] were recorded in text messages," before Plaintiff responded with "I don't believe that is what it says."  (DN 57-24, at PageID # 1547.) Plaintiff was then asked if the First Amended Counterclaims stated, "the statements made by Mr. Tiller in the preceding paragraph were published to these individuals via in-person communications, telephone conversations, and text messaging," to which Plaintiff answered "Yes, some of those statements were via text message." (*Id.*)  Plaintiff was then asked if he knew whether such text messages had been produced, and Plaintiff answered that anything he had would have been produced, but that he saw text messages referencing Tiller's reasons for firing Plaintiff.  (*Id.*) Plaintiff was then asked nine more times if he knew whether he produced those text messages.  (*Id.* at PageID # 1548-50.)  Plaintiff mostly repeated the same answer: he produced everything he had. (*Id.*)  At one point, Plaintiff answered this question with "I would have to see the documents.  You are asking me about stuff that was produced five or ten years ago." (*Id.* at PageID # 1549.)  Finally, Plaintiff admitted he did not recall whether he produced those text messages but stated that he could have.  (*Id.* at PageID # 1550.)  Accordingly. the Court is unpersuaded by Plaintiff's assertion that Defendant spoliated relevant communications.

> **b)**    **The Court does not find that the lost text messages or e-mails are important to this litigation.**

Under Rule 37, neither party has the burden to prove or disprove prejudice from lost ESI. Though in many cases the content of lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties.  Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. In those cases, it may be reasonable for a court to require the party seeking curative measures to

20

prove prejudice.  *Id.*  Here, as the Court finds that the relevance of lost ESI is not readily apparent, the Court believes Plaintiff should have the burden to show prejudice.

Here, the Court finds that Plaintiff has not met his burden to show prejudice.  First, as discussed above, the Court is not convinced that any lost ESI is relevant.  Second, any relevant evidence bearing on this information would either have been in Plaintiff's possession at some point, or potentially retrievable by third parties.  For example, Plaintiff points to Tiller's testimony that he saw text messages that documented his reasons for firing Plaintiff, but Tiller also testified that Plaintiff possessed those texts at some point.  (DN 47-9, at PageID # 645.)  Moreover, Plaintiff himself testified that "people showed" him text messages that "they didn't want to give [him] to use against Bryson because they didn't want to get on his bad side."  (DN 57-24, at PageID # 1547.)  Plaintiff has not established why he could not seek discovery from those individuals instead.  Thus, the undersigned finds that Plaintiff has not been prejudiced by the loss of ESI.  As Rule 37(e)(1) requires a finding of prejudice and permits measures no greater than necessary to cure the prejudice, the Court will not impose any curative measures.

### B.    Motion to Compel (DN 47)

Under Rule 34, a party may serve on any other party a request, within the scope of Rule 26(b), to produce any designated documents or electronically stored information within the responding party's possession, custody, or control.  Fed. R. Civ. P. 34(a).  Under Rule 37, a party may move the Court to compel production if the responding party fails to produce documents as requested under Rule 34.  Fed. R. Civ. P. 37(a)(3)(B)(iv).

### 1.    The Court will only order Defendant to produce documents within his direct or actual possession.

Under Rule 34, a party may only request documents that are within the responding party's "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  Documents are within the "possession,

custody, or control" of a responding party when that party has either: (1) actual possession, custody, or control; or (2) has the legal right to obtain the documents on demand. *In re Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995).

Here, there is no dispute that Defendant has possession, custody, or control over *his own* financial documents. But there is a dispute as to whether Defendant has legal control over Tiller's financial documents. Defendant does not possess Tiller's financial records. (DN 57-5, at PageID # 1284.) Nevertheless, Plaintiff insists that Defendant has the right to obtain financial records from Tiller upon demand. (DN 47-1, at PageID # 535.) The Court is not convinced. Plaintiff cites to the Personal Management Agreement to argue that Defendant has full audit and accounting rights under his contract with Tiller. (DN 47-1, at PageID # 535.) Plaintiff overstates the actual language of the agreement. The text of the Personal Management Agreement gives either party the right to an accounting of all transactions between a party and any third party. (DN 49-5, at pageID # 829.) The Personal Management Agreement also gives both parties the right to "reasonable inspection to the other's books and records which relate to the subject matter hereof in order to verify the accuracy of such accountings." (*Id.*) The Court does not believe this means Defendant has the right to request and then produce "Tiller's annual profit and loss and/or income statements from 2018 to the present." (DN 47-1, at PageID # 538.) Accordingly, the Court does not find that the Personal Management Agreement gives Defendant legal control over Tiller's financial records.

The Court also does not agree that Defendant's position as Tiller's agent gives him the right to produce Tiller's financial records. Plaintiff has not cited a single case that stands for such a proposition. Even so, an agent does not necessarily have legal control over a principal's documents. An action against an agent does not authorize the Court to order production of the

principal's documents through the agent.  *See Braswell v. United States*, 487 U.S. 99, 109-110 (1988) (holding that custodians of corporate records hold those documents in a representative capacity and thus production of those records is not a personal act, but an act of the corporation); 7 *Moore's Federal Practice*, § 34.14[2][c] (Matthew Bender 3d Ed.) ("[W]hen an action is against an officer individually, and not also against the corporation, production may be denied unless there is evidence that the officer is the "alter ego" of the corporation.").  The fact that Tiller, the principal in question, is a natural person and not a corporation compounds the ordinary problems a court may face when ordering an agent of a corporation to produce documents held in trust for the corporation because such a course of action would circumvent Tiller's ability to object to the production of his own documents.

The Court is also not convinced that, because Defendant's attorney was Tiller's attorney for many years, Defendant thus has the legal right to obtain documents from Tiller through their shared attorney.  *See In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 547 (S.D.N.Y. 2013) ("The fact that attorneys for the [p]laintiffs also happen to represent parties in *Arab Bank* is irrelevant.").  Without the legal right or practical ability to obtain Tiller's financial records on demand, the Court will not compel Defendant to produce Tiller's records outside of Defendant's actual possession.

However, the Court may still compel Defendant to produce Tiller's financial records in Defendant's *actual* possession.  Plaintiff asserts Defendant has records that reflect or identify Tiller's income.  (DN 47-1, at PageID # 534.)  As evidence of this, Plaintiff points to letters and e-mails Defendant was copied on.  (*Id.*)  Based on these communications, Defendant appears to have the practical ability to obtain such communications by searching his own e-mail inbox.

Accordingly, the Court finds Defendant has actual possession of at least some information bearing on Tiller's income.

### 2.    Defendant and Tiller's financial information is relevant to Plaintiff's claim.

Information must be relevant to be discoverable.  Fed. R. Civ. P. 26(b)(1).  The Supreme Court has interpreted relevance broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on," the claims or defenses of any party.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Essentially, a request for discovery seeks relevant information if there is *any* possibility that the information sought may be relevant to a claim or defense of any party in the action.  *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007).  When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate relevance.  *First Mercury Ins. Co. v. Babcock Enters., Inc.*, No. 3:21-CV-00672-GNS-CHL, 2024 WL 3939604, at *7 (W.D. Ky. Aug. 26, 2024).  When the material sought appears to be relevant, the party resisting production must show that the material is not relevant, or that it is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure.  *Invesco*, 244 F.R.D. at 380.  This party bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury.  *Id.*

Under Kentucky law, a claim for tortious interference with a contract is governed by the Restatement (Second) of Torts.  *Brown & Brown of Kentucky, Inc. v. Walker*, 652 S.W.3d 624, 640 (Ky. Ct. App. 2022).  Under the Restatement, one who intentionally and improperly interferes with the performance of a contract is liable for the pecuniary loss resulting from the failure to perform the contract.  Restatement (Second) of Torts § 766 (Am. L. Inst. 1979).  While ascertaining damages to any legal degree of certainty can be difficult, lost profits is an ascertainable measure

of damages. *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1081 (W.D. Ky. 1995) (citing *Carmichael-Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc.*, 561 S.W.2d 99, 102 (Ky. Ct. App. 1977)). Under the Management Agreement, Plaintiff was entitled to 20% of Tiller's net compensation for all existing entertainment industry related sources. (DN 1-1, at PageID # 14.) The Management Agreement further provided that Plaintiff continue to receive 10% of Tiller's net income during the first year after the Management Agreement expired or was terminated, for any deals Plaintiff originated and Tiller accepted. (*Id.* at PageID # 15.) Plaintiff's lost profits are thus tied to Tiller's income. Thus, any evidence bearing on Tiller's income would be relevant to Plaintiff's damages.

Here, the Parties do not dispute that Tiller's income information would be relevant for the period from 2015 through 2017. (DN 57, at PageID # 1190-91.) But the Parties dispute whether information bearing on Tiller's income up to the present day is relevant. (DN 47-1, at PageID # 533.) Plaintiff argues that the trier of fact could reasonably infer Plaintiff would still be Tiller's music manager today but for Defendant's alleged interference. (DN 47-1, at PageID # 533.) Defendant argues that such profits are too remote, conjectural, and speculative, and that the law could not allow for recovery of such damages at all. (DN 57, at PageID # 1191-92.)

The Court finds that Defendant's argument is premature. What Plaintiff may recover in damages is a fact-specific issue; it requires proof to establish a degree of reasonable certainty. *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 553 (Ky. Ct. App. 2016). The purpose of discovery is to "help define and clarify the issues." *Oppenheimer*, 437 U.S. at 351. As such, the standard of relevance *for discovery* is a low one. *Invesco*, 244 F.R.D. at 380 (holding that information is relevant if there is any possibility that it may bear on the claim or defense of any party); *see also Grant v. Target Corp.*, 281 F.R.D. 299, 306 (S.D. Ohio

2012) ("The concept of relevance during discovery is necessarily broader than at trial.").  The Court has not yet determined whether Plaintiff is entitled to lost profits for a period beyond what is stated in the contract, as Plaintiff could very well establish with reasonable certainty that lost profits for the period after the contract were caused by Defendant's alleged interference as well. To decide that issue now would defeat the purpose of discovery.  *See Veritiv Operating Co. v. Phoenix Paper Wickliffe, LLC*, No. 5:21-CV-00170-BJB-HBB, 2023 WL 2975868, at *10 (W.D. Ky. Apr. 17, 2023) ("Phoenix's position conflates relevancy for discovery purposes with a challenge to the weight and admissibility of the lost profits calculations/projections of Veritiv's expert.").  Accordingly, the Court finds that information bearing on Tiller's income for any period is relevant for discovery purposes.

The Parties also dispute whether Defendant's financial information is relevant.  The Court finds that it is.  Defendant argues that his income is irrelevant because the measure of damages for tortious interference is Plaintiff's loss, not Defendant's gain.  (DN 57, at PageID # 1187.)  Even so, Defendant's income may still be used to calculate Tiller's income.  Defendant's earnings were based on Tiller's earnings.  (DN 68, at PageID # 2342.).  The fact that Defendant is paid a percentage of Tiller's *gross* income while Plaintiff was paid a portion of Tiller's *net* income does not change this.  Tiller's gross income may be a factor in calculating Tiller's net income, meaning that Tiller's gross income is relevant as well.  *See Veritiv*, 2023 WL 2975868, at *10 (holding that defendant's gross and net revenues were relevant to calculate plaintiff's lost profits).  Accordingly, the Court finds Defendant's financial information is relevant to establishing Plaintiff's damages. As the Court finds Defendant's financial information is relevant to determine Plaintiff's damages, the Court sees no reason to analyze the relevance of the requested information as it relates to Defendant's motivation to allegedly breach the Agreement or for the award of punitive damages.

### 3.    The additional information is not unreasonably duplicative or cumulative.

Under Rule 26, the Court has an obligation to limit the frequency or extent of discovery otherwise permitted by the Federal Rules when the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Courts generally do not limit discovery simply because it may be *somewhat* cumulative and duplicative.  6 *Moore's Federal Practice*, § 26.60[2] (Matthew Bender 3d Ed.)  Instead, discovery must be unreasonable considering the nature of the inquiry.  *Id.*

Defendant argues that Plaintiff has all the financial documents he needs to calculate the damages he could conceivably recover at trial.  (DN 57, at PageID # 1192.)  Plaintiff obtained Tiller's financial records from a subpoena he served on Tiller's business manager Paragon.  (*Id.* at PageID # 1191.)  Plaintiff was then able to calculate his damages through 2017.  (*Id.*)  Defendant thus argues Plaintiff should not receive additional financial documents because such documents could only support Plaintiff's "wholly unsupported theory that he would have been able to convince Tiller to continue working with him well beyond the stated term of the Management Agreement."  (*Id.*)

Plaintiff responds by arguing that the additional information will likely corroborate the existing calculations for the 2015-2017 damages period; support the expected damages calculation for the period of 2018 to the present; support the interpretation of "net compensation" under the Management Agreement that will be provided by Plaintiff's expert; and allow Plaintiff to impeach any testimony challenging his expert's calculations or the basis for those calculations.

The Court agrees that the information sought by Plaintiff is not duplicative as it relates to the calculation of damages for the period after 2017.  As for information concerning the 2015-

2017 damages period, the Court acknowledges that this information may be *somewhat* duplicative but may still be useful for Plaintiff.  As Plaintiff points out in his motion, he can use the additional information to confirm and corroborate his existing calculations.  He could also use the information to impeach testimony from Defendant that challenges those calculations.  Moreover, Defendant has not demonstrated why the burden imposed by producing these documents would outweigh the benefit to Plaintiff.  *See Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 145 (D. Mass. 1987); *cf. Gonzales v. Google, Inc.*, 234 F.R.D. 674, 686 (N.D. Cal. 2006) (holding that the marginal burden on defendant outweighed the likely benefit to the plaintiff).  Accordingly, Defendant's Motion to Compel is **GRANTED IN PART**.

> **4.    The Court will not award either party payment of reasonable expenses.**

Under Rule 37, if a court grants a Motion to Compel in part, then the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the Motion.  Fed. R. Civ. P. 37(a)(5)(C).  When parties have taken legitimate positions, and the court grants a motion to compel in part, then courts generally conclude that justice requires that each party be responsible for their own fees and costs.  *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 720 (D.N.M. 2017).  As the Court has decided to grant Plaintiff's Motion in part, and both Parties have advanced reasonable positions, the Court does not believe it is appropriate to award Plaintiff payment for his expenses in prosecuting this Motion.

> **C.    Motion for Extension of Remaining Case Deadlines (DN 47)**

The Court finds good cause for the proposed extension.  Plaintiff will receive additional information concerning Defendant's and Tiller's finances, and thus will need additional time to make damages calculations.  Accordingly, Plaintiff's Motion for Extension of Remaining Case Deadlines (DN 47) is **GRANTED**.

**D.      Motions to Seal**

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), the Supreme Court held that "every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* at 598. Accordingly, the Sixth Circuit Court of Appeals reviews a district court's order to seal its records for abuse of discretion. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 306 (6th Cir. 2016). But the Sixth Circuit does not accord the district court the traditional scope of narrow review reserved for discretionary decisions based on first-hand observations due to the important right of public access to court records. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983). Therefore, only the most compelling reasons can justify non-disclosure of judicial records. *Id.*

It is well-established that a "strong presumption" exists in favor of keeping court records open to the public. *See, e.g., Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176–79 (6th Cir. 1983). The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "only the most compelling reasons can justify non-disclosure of judicial records." *Shane*, 825 F.3d at 305 (quoting *In re Knoxville*, 723 F.2d at 476). To meet this burden, the party seeking a seal must show: (1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly tailored. *Id.*; *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593–94 (6th Cir. 2016). "[O]nly trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Shane*, 825 F.3d at 308 (citation and internal quotation marks omitted). The Sixth

Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* at 305–06 (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys.*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a Motion to Seal, the Court is required to make "specific findings and legal conclusions 'which justify nondisclosure to the public.'" *Rudd*, 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176).

Defendant is asking the Court to strike certain exhibits from the record. Courts review a decision to grant or deny a motion to strike for an abuse of discretion. *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006). Under Rule 12(f), a court may strike only material that is contained in the pleadings. *Id.* Exhibits are not "pleadings" within the meaning of Rule 7(a) and are therefore not subject to a motion to strike under Rule 12(f). *Id.*

The Sixth Circuit has held that courts may strike an affidavit from the record. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). But this only applies to affidavits that directly contradict prior deposition testimony for the purpose of creating a sham issue of fact to defeat a Motion for Summary Judgment. *Id.* The Court is not aware of any authority from the Sixth Circuit Court of Appeals, nor does Defendant cite to any, to suggest that this rule applies to other papers filed for any purpose other than to create a sham factual issue.

Moreover, the Court should approach any request to strike papers from the record with caution. When sealing records from the public, courts must "set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane*, 825 F.3d at 306 (quoting *Brown & Williamson*, 710 F.2d at 1176). If a district court strikes a paper from the record, then the reviewing court is unable to assess whether the district court properly applied the standard for

nondisclosure.  The Court will thus not strike any documents as requested by Defendant. Nevertheless, the Court will still consider Defendant's request to seal certain documents.

     1.    **DN 48**

Plaintiff has filed a Motion to File Certain Materials Provisionally Under Seal.  (DN 48.) Plaintiff is seeking leave to file Exhibits 10, 14, 15, 26, 27, and 28 (DNs 49, 49-1, 49-3, 49-4, 49-5) to his Motion for Sanctions (DN 47) under seal.  Defendant has filed a Cross Motion to Strike the Sealed Documents, or in the Alternative Permanently Seal those Documents.  (DN 61.) Defendant takes no issue with Exhibit 14 (DN 49-1) remaining in the public record, nor does Defendant take any issue with Exhibit 28 (DN 49-5) remaining in the public record.  Finally, Defendant takes no issue with Exhibits 26, and 27 (DNs 49-3, 49-4) remaining in the public record as redacted.  Defendant does request that Exhibit 15 (DN 49-2) remain under seal, specifically the final four pages of the exhibit.  Defendant argues that these pages contain highly sensitive allegations that are not relevant to Plaintiff's Motion.  (DN 47.)

When it comes to sealing, a "confidentiality agreement ... does not bind the court in any way." *Brown & Williamson*, 710 F.2d at 1180; *See Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1006 (S.D. Ohio 2015) (finding that a confidentiality provision in a redemption agreement between a defendant and a third party "may have been sufficient to justify the protective order, [but] it is insufficient to justify filing documents on the court's docket under seal").  On the other hand, specific legal authority mandating confidentiality is indicative of a potentially compelling reason for sealing.  The Court agrees that Exhibit 15 (DN 49-2) should remain under seal.  The right to inspect and copy judicial records is not absolute. *Nixon*, 435 U.S. at 598.  The common-law right of inspection is limited by the power of a court to ensure its records are not used to gratify spite or promote public scandal. *Id.*  The sensitive

allegations against a public figure contained in these four pages would certainly risk public scandal if they were unsealed.

But it is not enough that the proponent of sealing demonstrates a compelling privacy interest; such interest must outweigh the public's right to ascertain the evidence that the Court relied upon in reaching its decisions. *Brown & Williamson*, 710 F.2d at 1181. Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access. *Shane*, 825 F.3d at 305. Here, the public interest in disclosing the sensitive subject matter is minimal. These pages were attached as an exhibit to Plaintiff's Motion (DN 47), yet not once did the Court ever rely on them in ruling on the Motion. Plaintiff argues that these pages are relevant to the issue as to when Defendant's duty to preserve arose because, when combined with unfiled pages, they demonstrate that Tiller discussed "certain aspects" of the Former Litigation with Defendant. (DN 70, at PageID # 2424.) The addition of information contained in unfiled testimony does not affect the Court's decision. Even if Defendant knew of the sensitive allegations, that would not mean Defendant knew Plaintiff intended to sue him later. Moreover, the deposition transcript was filed as an exhibit to a Motion for Sanctions, not a dispositive motion on the merits that would have carried a greater public interest in disclosure. *Cf. Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25, 2020) (holding that the public had a greater interest in accessing a document offered in support of a Motion for Summary Judgment). Thus, the Court finds the public interest in this information is minimal.

Even though the Court finds the privacy interests implicated by the exhibit outweigh the public interest in disclosure, the Court must still narrowly tailor any redactions to serve the compelling interest in secrecy. *Shane*, 825 F.3d at 305. The Court must also set forth specific

findings and conclusions that justify nondisclosure. *Id.* at 306.  Here, the Court finds Defendant's redactions, while not excessive, should be reduced.  *See Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't*, No. 319CV00851BJBCHL, 2022 WL 1814260, at *5 (W.D. Ky. June 2, 2022) ("Defendants have not met their burden of showing that sealing the confidential case files in their entirety is justified.").  Accordingly, the Court will instruct Defendant to file a redacted version of Exhibit 15 (DN 49-2) publicly in the record.  Defendant shall redact 442:9-443:4, 443:19-20, 444:7-22.

As for Exhibit 10 (DN 49), Defendant has not provided the Court with his reasons for why he believes Exhibit 10 should remain under seal, though he has reserved the right to do so later. (DN 61, at PageID # 1713 n. 1.)  That is because Plaintiff has not provided Defendant with a copy of Exhibit 10.  Accordingly, out of fairness to Defendant, the Court will instruct Plaintiff to provide Defendant with a copy of Exhibit 10.  The Court will then grant Defendant leave to file a Motion to Seal that document.

### 2.    DN 51

Defendant has filed Exhibit J (DN 50-10) as an exhibit to his Motion for Summary Judgment.  (DN 50.)  Defendant moves to provisionally seal the exhibit to satisfy his obligations under the confidentiality agreement.  Plaintiff has not provided a response, nor has Plaintiff sought to maintain Exhibit J (DN 50-10) permanently under seal.  The Court will therefore order Exhibit J to be permanently unsealed.

### 3.    DNs 63 and 67

Defendant has no objection to the Court permanently unsealing Exhibits 8 and 9, (DNs 64-2, 64-3.)  As for Exhibits 1 and 6 to Dorn's Response in Opposition to Dominique's Motion for Summary Judgment (DN 64, 64-1), Defendant's Cross Motion and Reply (DNs 72 and 77) do not

address the standard for filing a document under seal.   It is well-established that a "strong presumption" exists in favor of keeping court records open to the public. *See, e.g., Brown & Williamson*, 710 F.2d at 1176-79.   The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Shane*, 825 F.3d at 305 (quoting *In re Knoxville*, 723 F.2d at 476).   To meet this burden, the party seeking a seal must show: (1) that there is a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly tailored. *Id.*; *Rudd*, 834 F.3d at 593-94.   The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane*, 825 F.3d at 305-06 (quoting *Baxter*, 297 F.3d at 548).   Further, in ruling on a Motion to Seal, the Court is required to make "specific findings and conclusions 'which justify nondisclosure to the public.'" *Rudd*, 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176). "'[A] court's failure to set forth those reasons . . .' is itself sufficient grounds to vacate the seal." *Id.* (quoting *Shane*, 825 F.3d at 306).   The fact that parties might agree that the document should be filed under seal has no bearing on the Court's analysis.   "A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody." *Shane*, 825 F.3d at 307.   Accordingly, the Court will permanently unseal Exhibits 1 and 6.  (DNs 64, 64-1.)

As for Exhibits 15, 25, and 26 to Dorn's Response in Opposition to Dominique's Motion for Summary Judgment (DNs 64-4, 64-5, 64-6), and Exhibit 3 to Dorn's Reply in Support of his Motion for Sanctions, Motion to Compel, and Motion for Extension of the Remaining Case Deadlines (DN 68), Defendant's Cross Motion and Reply (DNs 72, 77) barely mentions the standard for maintaining documents under seal.  Defendant argues that these documents contain

"sensitive and business information of Tiller, a third-party." (DN 77, at PageID # 2505.) Defendant then cites to various cases where courts found that sensitive and business information of third parties constituted a privacy interest significant enough to justify sealing.

In *Morris v. Tyson Chicken*, No. 4:15-CV-00077-JHM, 2020 WL 3442177 (W.D. Ky. June 23, 2020), the Court recognized a compelling interest in concealing business information that could harm a business's competitive standing. *Id.* at *2. Like Defendant in this matter, the defendant in *Morris* argued that the proffered documents contained confidential information like the plaintiff's pay, Tyson's individual specifications, and proprietary information. *Id.* The Court granted the defendant's request to seal the proffered documents to the extent they contained personal financial information and confidential business information that could harm Tyson's competitive standing. *Id.*

In *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945 (W.D. Ky. June 26, 2018), the Court recognized that documents proffered by the defendant would, if publicized, allow defendant's business rivals to easily learn the terms of its deals and poach third parties from underneath them. *Id.* at *6. The Court compared this privacy interest to the relatively low public interest in disclosure, noting that the sensitive information was not pertinent to the underlying motion to dismiss. *Id.* The Court concluded that, considering the narrowly tailored scope of the seal, the privacy interest in sealing the proffered documents outweighed the public interest in their disclosure. *Id.*

Here, Defendant seeks to permanently seal Exhibits 15, 25, 26, 27, and 3 in their entirety. The Court may not do so without a compelling interest. *See Shane*, 825 F. 3d at 308 ("In any event, the parties or the third parties themselves remain free on remand to demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the

demanding requirements for a seal."). While the Court recognizes that private income and financial data can constitute a compelling interest in sealing, Defendant has not specifically articulated a sufficient reason for sealing these documents in their entirety. *See Chelsey Nelson*, 2022 WL 1814260, at *5 (holding that the defendants could not justify sealing a proffered document in its entirety even though the privacy interest in secrecy outweighed the public's right to access).

Accordingly, Defendant's Cross Motion to Seal (DN 72) is **DENIED WITHOUT PREJUDICE**. Defendant may file a redacted version of the proffered exhibits, justifying on a document-by-document, line-by-line basis, the privacy interests in redacting such information, and why such privacy interests outweigh the public's right to access the full document. Alternatively, Defendant may file a Motion to Seal to explain why the privacy interests in sealing the exhibits *in their entirety* outweigh the public's right to access any part of the exhibits.

## III.    Order

Accordingly,

IT IS HEREBY ORDERED that:

(1)    Plaintiff's Motion for Leave to File Memorandum in Support of Motion for Sanctions in Excess of Page Limitations (DN 46) is **GRANTED**. Plaintiff's Motion for Leave to File Excess Pages re Reply in Support of Motion for Sanctions and Motion to Compel (DN 65) is **GRANTED**.

(2)    Defendant's Motion for Leave to File Excess Pages with Response to Motion for Sanctions, Motion to Compel and Motion to Extend Existing Case Deadlines (DN 59) is **GRANTED**.

(3)    Plaintiff's Motion for Sanctions (DN 47) is **DENIED**.  The Court will not impose any curative measures on Defendant under Rule 37(e).

(4)    Plaintiff's Motion to Compel (DN 47) is **GRANTED IN PART**.  No later than **June 20, 2025**:

    a)    Defendant shall turn over his financial records from 2015 to the present including:

        i)    His personal tax returns.

        ii)    Any 1099, W-2, or K-1 forms issued to Defendant by Tiller.

        iii)    Any other supporting documents that detail the income Defendant received from Tiller such as income statements, pay stubs, e-mail correspondence, checks and/or bank statements.

    b)    Defendant shall turn over any of Tiller's financial records in Defendant's actual possession that identify income earned by Tiller and/or Defendant.  Defendant will not be compelled to produce any of Tiller's financial information outside of his actual possession.

    c)    Neither Party shall be compelled to pay the reasonable expenses incurred by the other in pursuing this Motion.

(5)    Plaintiff's Motion for Extension of Remaining Case Deadlines (DN 47) is **GRANTED**.  The Court's June 6, 2024, Scheduling Order (DN 38) is hereby amended as follows:

    a)    Disclosure of experts (Rule 26(a)(2)):

        i.    Plaintiff:                    July 14, 2025

        ii.    Defendant:                August 13, 2025

    b)    Deposition dates: Propose at least two dates, within 30 days, for each expert when exchanging each report.

c)     Close of expert discovery:     September 26, 2025

d)     **Dispositive and expert motions**.  October 27, 2025.  The Parties shall file all dispositive motions and any motions objecting to the admissibility of expert testimony under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Requests for extensions must be made by written motion, and will be granted only for good cause.

(6)     Plaintiff's Motion to File Certain Materials Provisionally Under Seal (DN 48) is **GRANTED**.  Defendant's Cross-Motion to Strike (DN 61) is **GRANTED IN PART**.  DN 49-2 shall remain permanently under seal but will not be struck from the record.  On or before **June 13, 2025**, Defendant shall file a redacted version of Exhibit 15 (DN 49-2) in the record that conforms with this Order.  On or before **June 13, 2025**, Plaintiff shall provide Defendant with a copy of Exhibit 10 (DN 49).  On or before **August 12, 2025**, Defendant may file a Motion to Seal the proffered document.  (DN 49.)  If Defendant has not filed a Motion to Seal by then, the proffered document shall be unsealed.

(7)     Defendant's Motion to Provisionally Seal Exhibit J to his Motion for Summary Judgment on the Issue of Causation (DN 51) is **DENIED**.  Exhibit J (DN 52) shall be permanently unsealed.

(8)     Plaintiff's Motions for Leave to Seal (DNs 63, 67) are **GRANTED**.  Exhibits 1, 6, 15, 25, 26, 27, and 3 (DNs 64, 64-1, 64-4, 64-5, 64-6, 64-7, 68) shall remain provisionally under seal.  Defendant's Cross-Motion to Permanently Seal Exhibits 15, 25, 26, 27, and 3 (DN 72) is **DENIED WITHOUT PREJUDICE**.  On or before **August 4, 2025**, Defendant may file a Motion to Seal the proffered documents.  (DNs 64, 64-1, 64-4, 64-5, 64-6, 64-7, 68.)  If Defendant has not

filed a Motion to Seal by then, the proffered documents shall be unsealed. The Clerk of Court shall permanently unseal Exhibits 8 and 9. (DNs 64-2, 64-3.)

June 3, 2025

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record