**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:20-CV-00118-BJB-CHL**

**STEVEN J. DORN,** **Plaintiff,**

**v.**

**NEIL S. DOMINIQUE,** **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Motions for Leave to Seal filed by Neil S. Dominique ("Defendant") (DNs 111, 133, 136, and 146) and the Motion for Leave to Seal filed by Plaintiff Steven J. Dorn ("Plaintiff"). (DN 121.) Defendant has filed a Response stating that he has no objection to Plaintiff's Motion to Seal. (DN 132.) Plaintiff has not filed a Response to any of Defendant's Motions, and the time for doing so has passed. Therefore, all Motions are ripe for review.

## I. Background

Defendant filed a Motion for Summary Judgment in this matter, arguing that Plaintiff's settlement agreement with Bryson Tiller ("Tiller") in his previous breach of contract case has already compensated him for any damages he could potentially claim in this tortious interference case and therefore could not recover any damages from Defendant. (DN 110, at PageID # 2999.) As an exhibit, Defendant includes a report prepared by Robert B. Kester (the "Kester Report") (DN 110-1), in addition to a transcript of a deposition taken of him (the "Kester Deposition"). (DN 110-2.) Defendant is seeking leave to seal the Motion for Summary Judgment, the Kester Report, and the Kester Deposition. (DN 111.) Defendant also filed a Reply Brief in support of his Motion

for Summary Judgment. (DN 131.) Defendant asks the Court for leave to file the unredacted version of his Reply Brief under seal as well. (DN 133.)

Plaintiff filed a Response Brief to the Motion for Summary Judgment. (DN 120.) As exhibits, Plaintiff filed, under seal, the Kester Report (DN 122-1), Defendant's income statements (DN 122-2), Plaintiff's amended and supplemental disclosures (DN 122-3), Plaintiff's supplemental answer to interrogatory 7 (DN 122-4), and a settlement agreement between Plaintiff and Tiller from a prior action between the two. (DN 122-5.) Plaintiff is asking the Court to seal the unredacted versions of these documents. (DN 121.) While Plaintiff has publicly filed a redacted version of his Response Brief (DN 120), Plaintiff has not publicly filed redacted versions of the exhibits.

Plaintiff also filed the management agreement between Defendant and Tiller as an exhibit to his March 27, 2025, Reply Brief in support of his Motion for Sanctions. (DN 68.) Defendant asks the Court to keep that document permanently under seal. (DN 136.) Finally, Defendant is asking the Court to maintain under seal the unredacted Transcript of the January 30, 2026, Hearing before District Judge Benjamin J. Beaton. (DN 146.) Defendant has provided the Court with his proposed redactions. (DN 146-1.)

## II. Discussion

### A. Standard

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), the Supreme Court held that "every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* at 598. Accordingly, the Sixth Circuit Court of Appeals reviews a district court's order to seal its records for abuse of discretion. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 306 (6th Cir. 2016).

But the Sixth Circuit does not accord the district court the traditional scope of narrow review reserved for discretionary decisions based on first-hand observations due to the important right of public access to court records. *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). Therefore, only the most compelling reasons can justify non-disclosure of judicial records. *Id.*

It is well established that a "strong presumption" exists in favor of keeping court records open to the public. *See, e.g., Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176–79 (6th Cir. 1983). The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "only the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp.*, 825 F.3d at 305 (quoting *In re Knoxville*, 723 F.2d at 476). To meet this burden, the party seeking a seal must show: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's right of access; and (3) that the proposed seal is narrowly tailored. *Id.*; *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593–94 (6th Cir. 2016) ("[O]nly trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), [are] typically enough to overcome the presumption of access."). The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.*, 825 F.3d at 305–06 (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys.*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a motion to seal, the court is required to make "specific findings and conclusions 'which justify nondisclosure to the public.'" *Rudd*, 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176).

**B. Privacy Interests**

In general, only trade secrets, information covered by a recognized privilege, and information required by statute to be maintained in confidence are enough to overcome the presumption of access. *Shane Grp.*, 825 F.3d at 308. However, these are not rigid categories. It is neither necessary nor sufficient for information to fit into one of these three categories to implicate a recognizable privacy interest. *See Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 638 (6th Cir. 2019) ("While the existence of a trade secret will generally satisfy a party's burden of showing a compelling reason for sealing documents, even if a trade secret does not exist, a court may still find a compelling reason exists; further, even if a district court finds that a trade secret exists, it must still determine whether public interest outweighs the moving party's interests in protecting their trade secret."). The Parties identify several categories of information that they want the Court to seal: personal and confidential financial information (DN 111, at PageID # 3318); the settlement agreement entered into between Plaintiff and Tiller (DN 121, at PageID # 4013); and the management agreement between Defendant and Tiller. (DN 136.)

**1. Financial Information**

The Court has recognized that keeping private financial data from public view can be a compelling interest. *Morris v. Tyson Chicken, Inc.*, No. 4:15-CV-00077-JHM, 2020 WL 3442177, at *2 (W.D. Ky. June 23, 2020) ("Courts have recognized the strong interest in keeping personal financial records from public view.") (quoting *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 301 F. Supp. 3d 759, 784 (S.D. Ohio 2018), *aff'd*, 954 F.3d 852 (6th Cir. 2020) (collecting cases)). Furthermore, information that can harm an entity's competitive standing if disclosed can implicate a privacy interest sufficient to justify sealing. *Cf. Nixon*, 435 U.S. at 598 ("Similarly, courts have refused to permit their files to serve as … sources of business information that might harm a litigant's competitive standing.").

In Defendant's first Motion to Seal (DN 111), Defendant states that his Motion for Summary Judgment, the Kester Report, and the Kester Deposition all "involve calculations by Dorn's expert Robert Kester that rely on the revenues, expenses, and income reported on profit and loss ("P&L") statements of entities affiliated with Bryson Tiller that Dorn obtained via a subpoena to Paragon Wealth Management ('Paragon')," and that such information could harm the competitive standing of Tiller and affiliated third-party entities if disclosed. (*Id.* at PageID # 3318.)

Defendant's Motion provides the Court with very little information. However, the Court can borrow from the Parties' prior Motion to Seal (DN 100) to shed light on the compelling interests in sealing. In their prior Motion, the Parties sought to seal documents from three entities, each a party to a different contract. (*Id.* at PageID # 2747-51.) These included Tiller's recording contract with RCA, Tiller's publishing contract with BMI, and Tiller's touring contract with AEG. (*Id.*) The Parties also sought to seal documents bearing on Tiller's income from recording, publishing, touring, and marketing activities. (*Id.* at PageID # 2750.) The Court ordered these documents sealed, citing to *Kentucky v. Marathon Petroleum Co.*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *6 (W.D. Ky. June 26, 2018), to hold that the Parties had a compelling interest in sealing because rival entities could use the information in those contracts to poach existing artists. (DN 129, at PageID # 4722.) The Court also held that Tiller had an interest in keeping his personal financial information confidential. (*Id.*) (citing *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:19-CV-00851-BJB-CHL, 2025 WL 1151680, at *4 (W.D. Ky. Apr. 18, 2025)).

The redacted information in the Kester Report includes Tiller's income generated through Trapsoul, Inc, the entity through which the RCA recording contract was signed. (DN 110, at PageID # 2992.) It also includes income generated from Trapsoul Touring, Inc., the entity through

which Tiller signed the AEG touring contract (DN 62-26) and from Pen Griffey Publishing, the entity through which Tiller signed the BMI publishing contract (DN 62-25). (DN 110-1, at PageID # 3351.) The redacted information thus includes information similar to the information that the Court sealed in its prior Order. (DN 129.) Therefore, Tiller's income, in addition to the breakdown of his income by source, both carry a compelling privacy interest. Defendant's income and Plaintiff's expected earnings carry a similar privacy interest. Plaintiff's expected earnings under his past agreement with Tiller, and Defendant's income under his current agreement with Tiller, are both derived from Tiller's income, and thus could be used to deduce Tiller's income. (DN 8-1, at PageID # 76-77) ("As compensation for Manager's services, Bryson Tiller hereby agrees to pay Manager a sum equal to twenty percent (20%) of all net compensation that Bryson Tiller receives from any and all existing entertainment industry related sources … and from any and all entertainment industry related agreements that Bryson Tiller enters into during the Initial Term and the Options Periods, if applicable."); (DN 120, at PageID # 3942-43) ("Since Dominique earned 20% of the gross income earned by Tiller, it can be reasonably estimated or inferred that Tiller earned gross income totaling … from 2018 through 2023.")

**2. The Settlement Agreement**

The Parties also seek to seal the entire settlement agreement between Tiller and Plaintiff as well as redact any references to such agreement. The Parties do not provide the Court with any reason to find that the settlement agreement implicates a privacy interest sufficient to justify sealing, nor does the Court find any reason to so hold. Finalized settlement agreements are not protected by the settlement privilege. *Ernspiker v. Norfolk S. Ry. Co.*, No. 3:20-CV-00745-RGJ-CHL, 2023 WL 6131089, at *2 (W.D. Ky. Sept. 19, 2023). Accordingly, the Parties fail to show a privacy interest implicated by the settlement agreement sufficient to justify sealing.

**3. The Management Agreement**

Defendant argues that the management agreement between himself and Tiller implicates a privacy interest sufficient to justify sealing because the agreement "contains private and confidential terms related to the relationship between Tiller and Dominique and in particular contains information related to the parties' financial arrangement." (DN 136, at PageID # 4841.) Defendant gives very little detail as to why this document should be sealed, beyond the phrase "the interest of parties to an agreement in preventing competitors from using their confidential business information to undercut them in negotiations provides a sufficient privacy interest to permit sealing." (*Id.* at PageID # 4842.) While this is a correct statement of law, it is not helpful to the Court's analysis. The Court has reviewed the management agreement and does not see what information could be used to harm anyone's competitive standing. Defendant's Motion leaves the Court with more questions than answers: Who would be harmed? How would he or she be harmed? What information, if revealed, would be harmful? This is far below the demanding standard under *Shane Group*. Accordingly, the Court finds no privacy interest in the management agreement sufficient to justify sealing.

**C. Public Interest**

At minimum, "[t]he public has a strong interest in obtaining the information contained in the court record." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1180). Beyond that, the particular circumstances of a case may strengthen that interest; "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* at 305. "The inverse is true, too. The lesser the public interest in the litigation's subject matter, the lesser the showing necessary to overcome the presumption of

access." *Caudill Seed & Warehouse Co., v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS-CHL, 2017 WL 3220470, at *5 (W.D. Ky. July 28, 2017).

Here, there are factors that cut both ways with respect to the public interest in the information. The settlement agreement and the financial information were cited by the Parties with respect to Defendant's Motion for Summary Judgment (DN 110) and the subsequent Response and Reply. (DNs 120, 131.) Documents offered in support of or in opposition to motions for summary judgment carry a public interest that is especially strong because such motions usually result in a ruling on the merits. *See Rudd Equip. Co., v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25, 2020).

However, this is not a case that inherently carries a strong public interest. This case involves a claim for tortious interference. (DN 8.) This is unlikely to be a case where the outcome determines whether a right exists, or whether a statute is constitutional. *See Shane Grp.*, 825 F.3d at 305. Nor is this a case involving issues crucial to the public, where the public's interest would be focused not only on the result, but on the conduct giving rise to the case. *See Id.* (identifying antitrust cases as the type of case where "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption") (quoting *Brown & Williamson*, 710 F.2d at 1180); *Brown & Williamson*, 710 F.2d at 1180 ("The subject of this litigation potentially involves the health of citizens who have an interest in knowing the accurate 'tar' and nicotine content of the various brands of cigarettes on the market."); *United States ex rel. Scott v. Humana Inc.*, No. 3:18-CV-00061-GNS-CHL, 2021 WL 4449277, at *5 (W.D. Ky. Sept. 28, 2021) ("Here, the subject matter of this litigation heightens the presumption of access. At its core, the case is about the cost of prescription drugs, a leading national concern among Americans."). This is also not a

class action case, where by definition some members of the public are also parties to the case. *See Shane Grp.*, 825 F.3d at 305.

Finally, the Court did not rely on the financial information in ruling on Defendant's Motion for Summary Judgment. (DN 141.) The Court ultimately denied Defendant's Motion on the grounds that it did not see a legal principle for dismissing Plaintiff's claim based on the settlement agreement. (*Id.*, at PageID # 4865.) Although the Parties discussed the figures in question, they were ultimately not pertinent to the Court's decision. (*Id.*) Thus, the public interest in the financial information is low. However, the public interest in the Parties' settlement agreement was higher. The terms of the settlement agreement were central to the first part of the hearing, and the Court relied on the existence and terms of the settlement agreement in making its ruling. (*Id.* at PageID # 4853-54.) Thus, the public interest in the settlement agreement is high.

The Court will caution the Parties that, although the Court did not rely on the financial information *yet*, this information is likely to become relevant at trial. *See* (DN 141, at PageID # 4866.) (advising the Parties that at trial they would not be allowed to offer hypothetical damages and that the Court would need to know what numbers they were relying on). If such information does become relevant at trial, the Court may not order such information to be kept under seal if introduced. But at this point, it is uncertain as to whether there will be a trial because the Parties are currently negotiating settlement. (DN 157.) Publicizing the information now would risk competitive harm to third parties, and without a certainty that the case will go to trial, such risk is not justified.

Finally, with respect to the management agreement, the Court will reiterate that it has not found a privacy interest sufficient to justify sealing. But like the financial information in this matter, it is unclear whether the management agreement will become relevant because it is unclear

whether this case will go to trial. Thus far, the management agreement has only been offered to prove that Tiller and Defendant did not enter into a written agreement until 2017. *See* (DN 66, at PageID # 2310.) Furthermore, the management agreement was offered in support of Plaintiff's Motion for Sanctions, meaning that it carries a lesser public interest than the financial information and settlement agreement. However, at minimum, the public does have a general interest in viewing documents filed in the record. *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1180). When compared to the lack of any sufficient privacy interest to justify sealing, the baseline presumption of access counsels against sealing. Therefore, the management agreement should be unsealed.

### D. Narrow Tailoring

It is not enough that the privacy interest in secrecy outweighs the public interest in openness; the Court must narrowly tailor any redactions to serve the compelling interest in secrecy. *Shane Grp.*, 825 F.3d at 305. The proponent of sealing must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305-06 (citing *Baxter*, 297 F.3d at 548.) And the Court must set forth specific findings and conclusions that justify nondisclosure. *Id.* at 306. The Court will therefore examine the Parties' proposed redactions and determine which ones it finds appropriate.

#### 1. Defendant's First Motion to Seal (DN 111)

Defendant asks the Court for leave to seal his Motion for Summary Judgment (DN 112), the unredacted Kester Report (DN 112-1), and the unredacted Kester Deposition. (DN 112-2.) The Court has reviewed these documents and compared them to the redacted versions. (DNs 110, 110-1, 110-2.) Defendant redacts references to the specific dollar amount that he claims Plaintiff would have been entitled to under the management agreement, the dollar amount of Tiller's income, dollar amounts in reference to Defendant's income, the dollar amount paid to Plaintiff

under his settlement agreement with Tiller, and all references to the settlement agreement. Upon review, the Court has determined that, although some of the redactions were appropriate, many were excessive. All mentions of Plaintiff's expected income under his agreement with Tiller as well as Tiller and Defendant's incomes may be redacted. But for the reasons set forth above, all references to the settlement agreement between Tiller and Plaintiff, including the amount paid to Plaintiff under the agreement, should be unredacted.

**2. Plaintiff's Motion to Seal (DN 121) and Defendant's Response (DN 132)**

Plaintiff has also filed a Motion to Seal his Response to Defendant's Motion for Summary Judgment, in addition to five exhibits. (DN 121.) Defendant has filed a Response to that Motion, along with his own Cross-Motion to Seal his Reply in Support of his Motion for Summary Judgment. (DNs 132, 133.) Defendant does not object to Plaintiff's Motion to Seal and has provided his own reasons to support Plaintiff's Motion. Upon review of the unredacted Response in Opposition to Defendant's Motion for Summary Judgment (DN 122) and accompanying exhibits (DNs 122, 122-1, 122-2, 122-3, 122-4, 122-5), and upon comparing the unredacted versions to the redacted versions (DNs 120, 120-1, 120-2, 120-3, 120-4, and 120-12), the Court finds Plaintiff's redactions excessive.

Although many of Plaintiff's redactions in his Response (DN 120) are appropriate, he has redacted too much. Plaintiff redacted the amount he received by Tiller pursuant to the Parties' settlement agreement. As discussed above, this amount should not be redacted. Therefore, the Court will instruct Plaintiff to file an additional redacted version of his Response that may include the same redactions as before except for the settlement amount Plaintiff received from Tiller.

Exhibit 1 (DN 120-1) is the Kester Report, which Plaintiff seeks to redact in its entirety. As the Court has already ordered Defendant to file its own redacted version of the Kester Report

in compliance with the instructions in this Order, the Court finds that the most efficient course of action is to simply replace the publicly filed placeholder (DN 120-1) with Defendant's redacted version, once it has been filed.

Exhibit 2 (DN 120-2) is comprised of some of Defendant's income statements. The Court agrees that this exhibit should be sealed in its entirety. The entire exhibit contains statements of Defendant's income, which the Court has determined should remain sealed. Exhibits 3 and 4 (DNs 122-3, 120-4) are Plaintiff's supplemental disclosures and response to interrogatory 7, respectively. Plaintiff seeks to seal them in their entirety. Although they contain the financial information the Court found should be sealed, they also included information beyond that financial information. Accordingly, the Court will instruct Plaintiff to file redacted versions of these exhibits that only redact the financial information at issue. Exhibit 12 (DN 122-5) is the settlement agreement between Tiller and Plaintiff, which should not be sealed at all.

### 3. Defendant's Motion to Seal Reply in Support of Motion for Summary Judgment (DN 133)

The majority of the information Defendant seeks to seal in his Reply (DN 131) are references to the settlement agreement between Tiller and Plaintiff. As discussed above, that information should not be sealed or redacted. However, Defendant may redact the dollar amount it claims Plaintiff may be entitled to under his management agreement with Tiller.

### 4. Defendant's Motion for Leave to Seal Portions of January 30, 2026, Hearing Transcript Concerning Third-Party Financial Information (DN 146)

Defendant asks to seal portions of the Transcript of the January 30, 2026, Hearing before District Judge Benjamin J. Beaton. (DN 146.) Defendant has also included his proposed redacted version of the transcript. (DN 146-1.) The Court has reviewed the unredacted Transcript (DN 141) and compared it to Defendant's proposed redactions. The Court finds that most of the

redactions are not appropriate. But the Court also finds that the figure reflecting the amount that Defendant asserts Plaintiff would have been entitled to under his management agreement with Tiller should be redacted because it references the financial information the Court found should be sealed. (DN 141, at PageID # 4857.) The Court further notes that the document containing Defendant's proposed redactions only contains select pages from the Transcript, rather than the full Court document with Defendant's redactions. The Court cannot replace individual pages of a document, and as such, the Court will instruct Defendant to file the full transcript as redacted in accordance with this Order.

**III. Order**

For the foregoing reasons,

IT IS HEREBY ORDERED that:

(1) The Motions for Leave to Seal Document (DN 111, 133, 136, 146) filed by Defendant are **GRANTED IN PART**.

(a) No later than **October 23, 2026**, Defendant shall publicly file his Motion for Summary Judgment, the Kester Report, and the Kester Deposition. Defendant may redact these documents in accordance with the instructions in this Order. DNs 112, 134, 141, and all accompanying exhibits shall remain **PERMANENTLY UNDER SEAL**. DN 68 shall be **PERMANENTLY UNSEALED**.

(b) No later than **October 23, 2026**, Defendant shall publicly file his Reply in Support of his Motion for Summary Judgment. Defendant may redact his Reply only in accordance with the instructions set out in this Order.

(c) No later than **October 23, 2026**, Defendant shall file the entire transcript of the January 30, 2026, Hearing before District Judge Benjamin J. Beaton, with Defendant's proposed redactions as permitted in this Order.

(2) The Motion for Leave to Seal Document (DN 121) filed by Plaintiff is **GRANTED IN PART**.

(a) No later than **October 23, 2026**, Plaintiff shall publicly file his Response to Defendant's Motion for Summary Judgment, his amended and supplemental disclosures, and his supplemental answer to interrogatory 7. Plaintiff may only redact these documents in accordance with the instructions in this Order.

(b) Once Defendant has filed a new redacted version of the Kester Report, the Clerk of Court shall replace DN 120-1 with a copy of Defendant's new redacted version.

(c) DNs 122, 122-1, 122-2, 122-3, and 122-4 shall remain **PERMANENTLY UNDER SEAL**. DN 122-5 shall be **PERMANENTLY UNSEALED**.

August 21, 2026

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record